Curran, Dennis J., J.
Procedural Background
On August 18, 2009, Joanne Price sued contractor James P. Healey, d/b/a Healey Construction and Development, for, inter alia, breach of contract arising out of a home improvement project. Healey failed to answer the complaint and was defaulted a year later on August 16, 2010. Price moved for a default judgment and a hearing to assess damages. That hearing was initially held on September 9, 2010, but at the request of the pro se defendant Healey, was continued until September 21, 2010.
At that latter hearing, Healey orally moved to set aside his default. After argument, this motion was denied for three reasons: first, Healey did not appear to have a meritorious defense; second, the underlying dispute between the parties had occurred almost five years before;[1] and third, nearly a year had passed since Healy had been served in this lawsuit and he had failed to file any responsive pleading. Thus, the assessment hearing proceeded.
Based on the credible evidence adduced at that assessment hearing (including affidavits submitted by Price and others in her behalf), Healey’s failure to offer any documentation in his defense, and the reasonable inferences drawn from that hearing, I make the following Findings of Fact.
FINDINGS OF FACT
Joanne Price contracted with Healey to perform significant work to the basement of her daughter’s home so she could live with her. Memorialized on September 2, 2005, the contract called for a total price of $77,000, of which Price paid $70,000 by five bank checks, itemized as follows:
Amount. Date
$30,000[2] September 23, 2005
$10,000 October 4, 2005
$10,000 October 15, 2005
$10,000 November 1, 2005
$10,000 December 12, 2005
TOTAL: $70,000
Healey promised to complete the work by November 2005. He claims he ran into difficulty in breaking up the concrete floor due to unexpected ledge and the work took longer than anticipated. All the while, Price faithfully provided a stream of payments to him. When the contractor realized $70,000 of the $77,000 agreed-on price,[3] he abruptly walked off the job, leaving it substantially incomplete. At the hearing, Price introduced photographs taken in late November 2005, demonstrating that Healey had left the job largely unfinished. Healey claims that the photos are misleading because he performed about three more weeks of work after they were taken. Price agrees that the last date of work was indeed December 23, 2005, but credibly rebuts Healey’s claim that any significant work was done during those first three weeks of December. At the end of the hearing, Healey was offered additional time to submit to the Court any and all invoices, bills, statements and the like evidencing this claimed extensive work, but he has since failed to file any such documents.
After Healey abandoned the project, Price discovered that he had also failed to apply for a building permit to perform the work.
Thus, we are faced with a homeowner who paid all but $7,000 on a $77,000 contract and a contractor who walked off the job after getting nearly all of the contract money, well before he did the commensurate amount of work. We must determine the amount of work actually performed.
Price submitted a supplemental affidavit dated September 23, 2010, in which she averred that the photographs accurately depicted the work Healey did and that he actually completed little to no work in December 2005. She also asserted that her initial payment of a lump sum of $30,000 to Healy was at his request because he claimed he needed the money to buy kitchen fixtures, cabinets, floors and doors. He never did so.
Healey’s credibility at the hearing was highly suspect based on many inconsistencies in his stoiy line about what work he actually performed.[4] Accordingly, I find that Healey breached this home improvement contract, the covenant of good faith and fair dealing, and was unjustly enriched.[5] I calculate Price’s single damages at $65,400 ($77,000 minus fifteen percent thereof, or $11,550).
*459 But this does not end the inquiry.
On September 9, 2009, Price’s attorney served a demand letter upon Healey alleging knowing and willful violations of chapter 93A:
Healey walked off the job leaving the work substantially incomplete and the job site a mess;
Healey neither applied for, nor received, any building permit for this $77,000 project;
Healey accepted money for work he never performed; and
Despite repeated requests, Healey failed to return Price’s money.
I find that Healey committed at least these four knowing and willful violations of chapter 93A. He also violated G.L.c. 142A, Section 2, as alleged in Price’s first amended complaint, paragraph 19(a) through (g), and that such violations provide a separate and independent basis for a chapter 93A violation.
Thus, damages to Price are doubled, i.e., $65,450 times two, or $130,900. Moreover, interest shall be added at the rate of 12 per cent from the date of breach of contract, which I find to be December 23, 2005, the day Healey walked off the job. Healey is also responsible for Price’s attorneys fees and costs,[6] which I find, after analyzing counsel’s billing records, to be $8,228.
ORDER
For the foregoing reasons, judgment shall enter forthwith for the plaintiff Price on counts I through VII of the first amended complaint for $65,450, doubled under G.L.c. 93A for a total of $130,900, plus interest from December 23,2005, plus $8,228 in attorneys fees and costs.

 During this period, Healey filed a chapter 13 bankruptcy petition on February 7, 2007, but after he failed to comply with a Trustee’s Order, and faced with a Trustee’s Affidavit of Non-Compliance, dismissed his petition three years later on February 11, 2010. See In re James P. Healey, United States Bankruptcy Court Docket No.: 07-10717 (D.Mass.).

 Although the payee on the bank check was her son-in-law, John Drapaniotis, he later transferred the money to Healey.

 The $70,000 Price paid represented a substantial portion of proceeds she realized from the sale of her condominium so she could pay for and renovate the basement of her daughter’s home to live in. Having lost her money to Healey, she was without funds to finish the project and it so remains to this day.

 Healey also claimed — under oath — that he had no money to pay any possible judgment, had no employees, no checking account, no assets and no funds. He did not help his case, however, when opposing counsel saw him leave the assessment hearing and climb into a brand new 2010 Hummer in the courthouse parking lot. (See affidavit dated September 24, 2010, filed with the Court.)

 Alternatively, and independently, I find that Price sustained quantum meruit losses.

 I must deduct the charges of $53.87 for “Westlaw-Lexis” research on November 24, 2009 and $63 for travel and parking expenses incurred on July 1 and 14, 2010, foratotal of $116.87. Further, the hourly billing rate for timekeeper “8" is reduced from $450 to $250. This is a garden-variety collection matter in which the liability issue was never really joined. Given this reality, regardless of the plaintiffs law firm administrative structure, this collection matter does not warrant an hourly billing rate of $450. Thus, the attorneys fee is reduced by $1,260 (that is, the original request was for 6.8 hours @ $450, but is reduced to $250 per hour). The total of reductions for attorneys fees and costs is $1,376.87, resulting in an approved fees and costs figure of $8,228.